## Godsey v. Commonwealth.

Feb. 12, 1943.

S. A. Cary for appellant.

Hubert Meredith, Attorney General, and W. Owen Keller, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE FULTON—Affirming.

The appellant, Shelton Godsey, was sentenced to the penitentiary for five years following his conviction for the malicious wounding of Harve Benson. The sole ground urged for reversal is that the evidence was insufficient to sustain the verdict.

Appellant had married a widow, Mrs. Sylvania Faust, about a year before the time in controversy but had not lived with her on account of her children's hostility to him and to the marriage. Benson's wife was a sister of Mrs. Faust. Appellant was apparently jealous of Benson on account of the latter's attentions, or imagined attentions, to Mrs. Godsey. A daughter of Mrs. Godsey, who admitted her dislike of appellant, testified that a

short while before the occasion in controversy appellant told her that if Benson "didn't stay away from there" he was going to kill him.

Between six and seven o'clock P. M. on the evening of November 21, 1941, Benson was at the home of Mrs. Godsey. He and Mrs. Godsey and some of her children were in the living room together. Someone fired a shotgun twice through the window, wounding Benson rather seriously. Benson testified that he saw appellant in the yard near the window a few minutes before the shots were fired. He was able to see him, he said, by the light thrown by the headlights of a passing automobile. A fourteen year old son of Mrs. Godsey testified that when the second shot was fired he saw appellant through the window but did not actually see him fire. Two women testified that during the afternoon appellant tried to borrow a shotgun from them to go rabbit hunting but that they did not lend him the gun.

Appellant admitted passing by his wife's home late in the afternoon while Benson was there but denied doing the shooting. He claimed that he went by the home of his brother sometime between six and seven o'clock but that the brother was not at home and that he then went to the home of a neighbor, Porter Worley, about one-half mile from the house where the shooting occurred. He did not know what time he arrived there but thought it was about one-half hour after dark. Worley testified that appellant came to his house about seven o'clock, or possibly ten minutes after seven, and spent the night.

It is thus seen that appellant's alibi was rather a weak one, not substantially supported by testimony other than his own. From the testimony of Worley, the only witness called by appellant in an effort to substantiate his alibi, it is apparent that appellant had ample opportunity to have done the shooting and arrive at Worley's house, less than one-half mile away, at ten minutes after seven, the hour fixed by Worley for his arrival.

While the evidence seems somewhat dubious nevertheless it was sufficient to justify a conviction if the jury believed the testimony of Benson or of the Faust boy, both of whom testified they saw appellant through the window at the approximate time of the shooting. We are not prepared to say that their testimony was so in-

credible that the jury were not justified in believing it and basing their verdict on it. The jury had before them evidence of a motive, jealousy. There was evidence of a threat by appellant to do the shooting and evidence that he was attempting to secure a shotgun shortly before the shooting. This evidence had a tendency to support the testimony of Benson and young Faust and render their somewhat dubious testimony more credible. The jury were warranted in accepting as true the testimony of one or both of these witnesses, consequently we cannot say that the verdict was flagrantly against the evidence.

Attached to appellant's brief we find affidavits of three persons to the effect that before the trial they heard a conversation between Benson and the Faust girl and boy in which they agreed they did not know who shot Benson and arranged what each of them should testify. These affidavits state that they did not know about appellant's trial and communicated this information to him only after he had been convicted. Appellant files his affidavit to the same effect.

These affidavits, which appellant seeks to inject into the case in this unusual manner, may not be considered by us in determining the correctness of the judgment since they were not made a part of the record in the lower court. We may add, however, that even though consideration could be given to the affidavits and even had the witnesses testified on the trial as in the affidavits, our conclusion as to the sufficiency of the evidence would be the same.

Affirmed.